IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRENT W. AMOS

v.                              Civil Action No. DKC 24-42

TROY EDWARD MEINK, Secretary
of the Air Force

**MEMORANDUM OPINION**

Brent W. Amos ("Plaintiff"), a former service member of the United States Air Force, brought this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 *et seq.*, to challenge the decision of the Air Force Board for Correction of Military Records ("AFBCMR") declining to alter his military records to reflect that he was medically retired or separated for permanent disability in October 1991. Presently pending and ready for resolution are the motion for summary judgment filed by Defendant Troy Edward Meink,[1] in his official capacity as Secretary of the Air Force, (ECF No. 21), Plaintiff's cross-motion for summary judgment, (ECF No. 26), Plaintiff's motion to amend his

---

[1] The complaint names Frank Kendall, III, in his capacity as Secretary of the Air Force, as the defendant. Troy Edward Meink became the Secretary of the Air Force on May 16, 2025. He is substituted as the proper defendant pursuant to Fed.R.Civ.P. 25(d), which states "when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending," the "officer's successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name."

prayer for relief, (ECF No. 29), and Plaintiff's "preemptive motion post filing motion to amend his prayer for relief," (ECF No. 33). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion for summary judgment will be granted in part and denied in part, Plaintiff's cross-motion for summary judgment will be granted, Plaintiff's motion to amend his prayer for relief will be withdrawn, and Plaintiff's preemptive motion regarding his prayer for relief will be denied as moot.

**I.  Background**

**A.  Statutory and Regulatory Framework**

An active-duty service member who is found "unfit to perform . . . because of physical disability incurred while entitled to basic pay," 10 U.S.C. §§ 1201(A), 1203(A), "may be either 'retired' or 'separated' from service, depending on the degree of disability[.]" *Sissel v. Wormuth*, 77 F.4th 941, 942 (D.C. Cir. 2023). The Secretary of the relevant military department determines if the disability renders the service member "unfit to perform the duties of the member's office, grade, rank, or rating." 10 U.S.C. §§ 1201(a), 1203(a). "Retired" service members are eligible to receive retirement benefits, while "separated" service members receive severance pay with no retirement benefits. *Id.* §§ 1201(a), 1203(a). A service member

with fewer than twenty years of completed service may be eligible for retirement benefits if the Secretary of the relevant military department determines that "the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination," and one of four other conditions is satisfied.[2]  *Id.* § 1201(b)(3)(B).  If the service member's disability is determined to be below the thirty percent threshold, "the member may be separated from the member's armed force, with severance pay" but without retirement benefits.  *Id.* § 1203(a).  Retirement benefits include "lifetime retirement pay, healthcare, and commissary privileges."  *U-Ahk-Vroman-Sanchez v. U.S. Dep't of Def.*, No. 19-cv-3141, 2021 WL 394811, at *1 (D.D.C. Feb. 4, 2021).

**1.  Medical Evaluation Board**

The Air Force makes determinations pursuant to this statutory scheme under the Disability Evaluation System ("DES").  Air Force Instruction ("AFI") 36-3212 ¶ 1.1.2 (2024).  As part of the DES, the Medical Evaluation Board ("MEB") "prepares documents required

---

[2] In addition to a thirty percent disability rating, a service member must satisfy one of the following to be eligible for medical retirement: (i) "the disability was not noted at the time of the member's entrance on active duty"; (ii) "the disability is the proximate result of performing active duty"; (iii) "the disability was incurred in line of duty in time of war or national emergency"; or (iv) "the disability was incurred in line of duty after September 14, 1978."  10 U.S.C. § 1201(b)(3)(B).

to identify medical defects or conditions that do not meet retention standards and may disqualify the member for continued active duty." AFI 36-3212 ¶ 2.2. If the MEB determines the service member's medical conditions "may prevent [the service member] from reasonably performing the duties of [the service member's] office, grade, rank, or rating," it will refer the case to the Physical Evaluation Board ("PEB") for further processing not relevant to this case. Department of Defense Instruction ("DoDI") 1332.18 § 3.2(d) (2022).

  **2. AFBCMR Review**

  A discharged service member who wishes to change his or her designation of discharge – including to reflect a disability – may request correction of the military records. 10 U.S.C. § 1552. The Secretary of a military department may correct a service member's military record if, in reviewing the service member's application, it is determined that a correction is "necessary to correct an error or remove an injustice." *Id.* § 1552(a)(1). The applicant bears the "burden of providing sufficient evidence of material error or injustice;" however, the AFBCMR "[m]ay get additional information and advisory opinions on an application from any Air Force organization or official" and "[m]ay ask the applicant to furnish additional information regarding matters before the [AFBCMR]." 32 C.F.R. § 865.4, 865.4(a). Applicants

may review and comment on advisory opinions and additional information obtained by the AFBCMR. *Id.* § 865.4(b). A service member who disagrees with the AFCBMR's decision may seek reconsideration based on "newly discovered relevant evidence that was not reasonably available when the application was previously considered." *Id.* § 865.6(a). A decision by the AFCBMR is a final agency action. *Id.* § 865.4(l).

### B.  Factual Background

Plaintiff served in the Air Force from August 5, 1980, until October 13, 1991.[3] (ECF No. 16-1, at 5). In 1981, Plaintiff tore his anterior cruciate ligament ("ACL") playing football for his military base. (ECF No. 1 ¶ 26). Between 1981 and 1987, Plaintiff had five knee surgery procedures related to his "anterior cruciate ligament and medial meniscus problems." (ECF No. 16-5, at 5). Plaintiff sought care for his right knee on multiple occasions in the fall of 1990, including September 25, October 1, and November 6. (ECF No. 16-2, at 36). On a form dated November 19, 1990, the Air Force noted Plaintiff was awaiting surgery "due to anterior cruciate ligament instability," and "he was not to run, perform heavy lifting or marching." (*Id.*).

---

[3] All facts are taken from the administrative record and undisputed, unless otherwise noted.

On September 17, 1990, Plaintiff filed a complaint against a Chief Master Sergeant regarding an insensitive remark. (ECF No. 16-1, at 5). On October 13, 1991, Plaintiff received an honorable discharge from the Air Force, with a designation stating he was "[e]ligible to reenlist but elected to separate." (*Id.*) Plaintiff did not go through the DES process before being discharged. (*Id.* at 12).

In April 2014, Plaintiff applied to the AFBCMR requesting correction of his military records to reflect that he was medically retired based on a disability. (*Id.* at 16).

On March 28, 2018, the AFBCMR denied Plaintiff's application, stating: "After careful consideration of your application for correction of military records, AFBCMR Docket Number BC-2014-01814, the Board determined there was insufficient evidence of an error or injustice to warrant corrective action." (*Id.* at 3).

## C.  Procedural Background

On January 5, 2024, Plaintiff filed a complaint against Frank Kendall, III, in his capacity as Secretary of the Air Force.[4] (ECF No. 1). On September 3, 2024, Defendant filed a motion for summary judgment. (ECF No. 21). Plaintiff filed a cross motion for summary judgment and opposition to Defendant's motion on October

---

[4] Frank Kendall, III was the Secretary of the Air Force at the time the complaint was filed. *See supra* note 1.

6

18, 2024.   (ECF No. 26).   Defendant replied to Plaintiff's opposition and opposed Plaintiff's motion on November 4, 2024, (ECF No. 27), and Plaintiff replied on November 25, 2024. (ECF No. 28).

On December 10, 2024, Plaintiff filed a motion to amend his prayer for relief, (ECF No. 29), which Defendant opposed on December 12, 2024, (ECF No. 30).  On December 18, 2024, Plaintiff filed a "preemptive motion post filing motion to amend Plaintiff's prayer for relief," asking the court to allow Plaintiff to add a violation of due process claim to his complaint.  (ECF No. 33). On December 20, 2024, Plaintiff filed correspondence with the court regarding "formal withdrawal" of his motion to amend.  (ECF No. 34).

## II. Standard of Review

"Reviews of agency action in the district courts must be processed *as appeals.*" *City of Columbus v. Cochran*, 523 F.Supp.3d 731, 742 (D.Md. 2021) (quoting *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994)).   "[M]otions for summary judgment are conceptually incompatible with the very nature and purpose of an appeal." *Cochran*, 523 F.Supp.3d at 742 (quoting *Olenhouse*, 42 F.3d at 1580); *see also Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 305 F.R.D. 256, 281 (D.N.M. 2015). "Accordingly, district courts reviewing agency action do not

determine whether a 'genuine dispute as to any material fact' exists, Fed.R.Civ.P. 56, and instead 'engage in a substantive review of the record to determine if the agency considered relevant factors or articulated a reasoned basis for its conclusions[.]'" *N.M. Health Connections v. United States*, 312 F.Supp.3d 1164, 1171 (D.N.M. 2018) (quoting *Olenhouse*, 42 F.3d at 1580). Summary judgment "serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Charter Operations of Alaska v. Blank*, 844 F.Supp.2d 122, 127 (D.D.C. 2012).

Under the APA, the reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "'[A]rbitrary and capricious' review focuses on the reasonableness of the agency's decisionmaking processes." *Rural Cellular Ass'n v. FCC*, 588 F.3d 1095, 1105 (D.C. Cir. 2009).

> [A]n agency decision is arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [offers an explanation for its decision that] is so implausible that it could not be ascribed to

a difference in view or the product of agency
expertise."

*Sierra Club v. Dep't of the Interior*, 899 F.3d 260, 293 (4th Cir.
2018) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto.
Ins. Co.*, 463 U.S. 29, 43 (1983)).

Review under the arbitrary and capricious standard is
deferential and narrow. "[A] court is not to substitute its
judgment for that of the agency," *State Farm*, 463 U.S. at 43, and
military boards are "afforded an unusually deferential application
of the arbitrary and capricious standard," *Dorado-Ocasio v.
Averill*, 128 F.4th 513, 520 (4th Cir. 2025) (citation modified).
Nonetheless, the arbitrary and capricious standard "is not meant
to reduce judicial review to a 'rubber-stamp' of agency action."
*Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th
Cir. 2009). The reviewing court must "engage in a 'searching and
careful' inquiry of the record." *Id.* (quoting *Citizens to Pres.
Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). Even with
the increased deference owed to military boards, plaintiffs can
show that a board's decision violated the APA "by showing that the
Board did not consider or respond to an argument that does not
appear 'frivolous' on its face and 'could affect the Board's
ultimate disposition.'" *Thompson v. United States*, 119 F.Supp.3d
462, 468 (E.D.Va. 2015) (quoting *Roberts v. Harvey,* 441 F.Supp.2d
111, 118–19 (D.D.C.2006)).

9

### III. Analysis

Plaintiff challenges, as arbitrary and capricious, the AFBCMR's decision not to update his records to reflect that he was medically retired or medically separated based on a disability. (ECF No. 1 ¶¶ 51-59). Plaintiff contends that he was not evaluated for a disability through the DES as retaliation for a September 1990 complaint against a Chief Master Sergeant. (ECF No. 26, at 6). Defendant moves for summary judgment on the grounds that the decision of the AFBCMR was not arbitrary or capricious, and that the court lacks subject matter jurisdiction to order a medical retirement or separation at Plaintiff's request. (ECF No. 21, at 9, 19). In his cross motion for summary judgment, Plaintiff asserts that the AFBCMR failed to consider properly his allegation of retaliatory action and several pieces of evidence. (ECF No. 26, at 4, 9). He also argues that the court should exercise its equitable power to grant him relief on an estoppel theory. (*Id.* at 10.) While the court agrees that there is no subject matter jurisdiction to order a specific outcome of the AFBCMR process, the court is persuaded that the decision of the AFBCMR was arbitrary and capricious and must be remanded.

### A.   Subject Matter Jurisdiction

Defendant argues that this court lacks subject matter jurisdiction over the portion of the complaint's prayer for relief

10

requesting "either a medical retirement or medical separation/severance, as supported by the administrative record." (ECF No. 21-1, at 19 (quoting ECF No. 1, at 11)). This court agrees. The APA only waives sovereign immunity for injunctive relief, not money damages. *Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996). In the military disability determination context, receiving a medical retirement or medical separation/severance entitles the service member to "retirement benefits or medical severance pay." (ECF No. 21-1, at 3). Plaintiff is specifically requesting that the AFBCMR be required to grant one of the statuses that leads to a monetary payout. In *Ganiszewski v. Austin*, No. 23-CV-02195-BAH, 2024 WL 4227759 (D.Md. Sept. 17, 2024), Judge Hurson found that there was no subject matter jurisdiction for a former servicemember's request for a particular disability rating:

> [Plaintiff]'s detailed request for remand with explicit conditions reveals that the essence of his claim is for money damages in the form of retirement pay. At best, ordering a particular rating likely falls beyond the Court's authority. *See Huffman v. Kelly*, 239 F. Supp. 3d 144, 156 (D.D.C. 2017), *aff'd sub nom. Huffman v. Nielsen*, 732 F.App'x 1 (D.C. Cir. 2018)("The Court agrees that its authority is limited to determining whether the [Coast Guard Board for Correction of Military Records] decisions violated the APA, and, if so, the relief the Court may award is limited to remanding the Board's decision to the Board."). More to the point, it proves that jurisdiction here is improper because

11

> "[Federal] Claims Court jurisdiction cannot be
> avoided by framing an essentially monetary
> claim in injunctive or declaratory terms."
> *Portsmouth Redevelopment & Hous. Auth. v.
> Pierce*, 706 F.2d 471, 474 (4th Cir. 1983).

*Id*. at *9. Because this court agrees with the Defendant that such a request is beyond injunctive relief, there is no subject matter jurisdiction for requiring the AFBCMR to find that Plaintiff should be medically retired or separated. The court will only consider whether the decision should be remanded to the AFBCMR for its reconsideration.

**B.    AFBCMR Decision Was Arbitrary and Capricious**

Defendant provides four arguments that the AFBCMR decision was not arbitrary or capricious:[5] (1) it was reasonable to adopt the medical advisory opinion recommending denial, (ECF No. 21-1, at 9); (2) it was reasonable to conclude that insufficient evidence was presented to demonstrate an error or injustice, (*Id*. at 10);

---

[5] Plaintiff points to *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), saying that the court no longer owes deference to the agency's decision. (See ECF No. 26, at 5, 19). As defendant notes, however, *Loper Bright* is inapplicable here. (ECF No. 27, at 4). *Loper Bright* changed the level of deference courts apply to agency construction of ambiguous statutes, not the level of deference applied to an agency's factual determinations. *Loper Bright*, 603 U.S. at 413. Plaintiff is not arguing that an agency incorrectly interpreted an ambiguous statute; rather, he challenges the decision an agency made after reviewing the facts. *Loper Bright* is inapplicable, and the agency is entitled to the standard deference of arbitrary and capricious review.

(3) the AFBCMR did not solely base their opinion on "the absence of medical evidence that Plaintiff was not unfit for service due to his knee injury at the time of discharge," (*Id.* at 15); and (4) the additional evidence Plaintiff proffered during this litigation supports the AFBCMR's decision, (*Id.* at 17).  Based on this court's review of the record, the AFBCMR failed to address several pieces of evidence.

It was unreasonable for the AFBCMR to adopt the medical and psychiatric advisory opinions as the basis of their denial.  While military boards can certainly benefit from advisory opinions as part of their review, 32 C.F.R. § 865.4(a)(1), Plaintiff filed two rebuttals totaling over 300 pages after the date of the medical review.  Rather than explain whether the evidence presented in rebuttal may change the medical consultant's initial recommendations, the AFBCMR adopted the consultant's position unchanged from nearly three years prior.  (ECF No. 16-1 at 13 ("We took notice of the applicant's complete submission, to include his rebuttal responses, in judging the merits of the case; however, we agree with the [advisory opinions] and adopt their rationale as the basis of our conclusion[.]"); *Id.* at 2 (showing that the BCMR Medical Consultant Recommendation was dated May 8, 2015, while the Record of Proceedings adopting the opinions was dated March 23, 2018)).  Following a comment in the medical advisory opinion noting

13

the author did not have Plaintiff's physical at the time of his separation, (ECF No. 16-2, at 38), Plaintiff provided a "Report of Medical History" dated September 16, 1991, where he noted he was "advised to have reconstructive knee surgery," (ECF No. 16-6, at 34), as well as the "Report of Medical Examination" for his separation dated the same day, where the physician noted he had "right knee ACL laxity," (*Id*. at 36). The psychiatric expert's opinion, dated June 13, 2017, noted "[t]he comprehensive review of the applicant's chart was summarized for the Board by the medical advisor in May of 2015 and will not be reiterated here. Only the information not available at that time will be presented below." (ECF No. 16-3, at 12). The psychiatric advisor then outlined only the portions of the evidence related to Plaintiff's mental health and did not mention any of the new medical evidence about Plaintiff's knee provided in his rebuttal of the medical advisory opinion. (*Id*. at 12-13.) It is insufficient for the AFBCMR merely to "t[ake] notice of the applicant's complete submission," including "his rebuttal responses." (ECF No. 16-1 at 13). The AFBCMR "failed to integrate any facts" from Plaintiff's rebuttal "into its conclusory determination," nor did it "explain at all how any facts" from the rebuttal materials "supported its final decision." *Williams v. Roth*, No. 8:21-CV-02135-PX, 2022 WL 4134316, at *7 (D.Md. Sept. 12, 2022). "Without any semblance of

14

an explanation, the Court cannot conclude the agency decision was rationally made." *Id.* By not adequately considering the rebuttal evidence provided by Plaintiff in its final decision, Defendant "offered an explanation for its decision that runs counter to the evidence before the agency." *Sierra Club*, 899 F.3d at 293.

While the Defendant argued that the AFBCMR did not base their decision solely on the lack of medical evidence regarding Plaintiff's fitness at the time of his discharge, Defendant failed to explain why the AFBCMR did not consider or weigh the additional medical evidence from around that time that they did have. The AFBCMR's conclusion notes "while the applicant argues he was severely disabled at the time of his discharge, he has presented no documentary evidence whatsoever that he had a medical condition or impairment at the time of discharge that disqualified him for further service." (ECF No. 16-1, at 13). The AFBCMR says it would need information from "the time of the applicant's discharge, effective 13 October 1991, or within the first 12 months of discharge." (ECF No. 16-1, at 7). AFBCMR failed to explain, however, why it gave little to no weight to the Air Force medical records from eleven months *before* Plaintiff's discharge showing he was unable to "run, heavy lift, or march," (ECF No. 16-4, at 4), awaiting surgery (*Id.*), and designated "ineligible to reenlist due to . . . applicable physical standards not being met," (ECF No.

16-5, at 14).  Plaintiff had provided multiple medical records showing that he sought treatment for his knee less than a year before he was discharged, (*E.g.*, ECF No. 16-6, at 10, 23), and a document from the Bureau of Prisons showing that he was unable to complete a self-defense class due to his knee injury less than two months after discharge, (ECF No. 16-3, at 61), both of which were discussed in the medical advisory opinion.  By declaring that Plaintiff had "no documentary evidence whatsoever" showing a medical condition at the time of his discharge, (ECF No. 16-1, at 13), AFBCMR "failed to consider an important aspect of the problem." *Sierra Club*, 899 F.3d at 293.

The additional evidence Plaintiff proffered as a part of this litigation is outside of the scope of what was considered by the AFBCMR.  "The 'focal point for judicial review' of agency action 'should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Cochran*, 523 F.Supp.3d at 742 (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).  As such, this court will not address how the records attached to Plaintiff's complaint could have impacted the AFBCMR's decision.

Finally, throughout his motion, Plaintiff maintains that the AFBCMR failed to give the appropriate weight to specific documents provided by Plaintiff.  (*See, e.g.*, ECF No. 26, at 7, 9, 13).

These documents include an "Expert Opinion Letter" from Retired Technical Sergeant Cabrera, (ECF No. 16-5, at 59-60), which Plaintiff alleges the Board only considered as a layman letter, (ECF No. 26, at 9); a student evaluation for the Bureau of Prisons where he could not participate in the self-defense class because of his knee, (ECF No. 16-3, at 61); a 2001 letter from former Bureau of Prisons coworker Robert Holmes, (ECF No. 16-6, at 47); and the 2015 letter from a Veterans Administration psychologist, (ECF No. 16-5, at 7). As described above, this court agrees that the AFBCMR failed to consider relevant pieces of evidence that Plaintiff provided in rebuttal to the Defendant's advisory opinions. This court's role is not, however, to prescribe how AFBCMR should weigh different pieces of evidence.

### C.   Plaintiff's Additional Arguments

In his cross-motion, Plaintiff argues that he should be granted summary judgment because (1) the AFBCMR failed to consider multiple pieces of evidence; (2) the Air Force retaliated against him and failed to put him through the DES process; and (3) the court should use its equitable powers to estop the government from taking certain actions. As described above, the court agrees that the AFBCMR failed to consider several relevant pieces of evidence

and will grant summary judgment on this basis.[6]  Plaintiff's other two arguments are unavailing at this juncture.

###    1.    Retaliation Allegation

Plaintiff alleges he experienced retaliation following his filing of a racial discrimination complaint against a supervisor. As Defendant notes, Plaintiff has not pleaded a discrimination claim, (ECF No. 21, at 15 n.10), and the initial complaint only challenged the AFBCMR decision as it related to Plaintiff's knee injury, not any mental health diagnoses, (*Id.* at 7).  Arguments not included in the complaint but raised for the first time in Plaintiff's motion for summary judgment have been waived. *Cochran*, 523 F.Supp.3d at 747.

Plaintiff argues, however, that the alleged retaliation he experienced meant that he did not go through the DES process to receive a disability rating for his knee before his discharge. Plaintiff provided multiple pieces of evidence to the AFBCMR

---

[6] While Plaintiff was represented by counsel when filing his complaint, he began representing himself *pro se* before filing the motions at issue in this opinion.  (ECF No. 9).  Courts hold p*ro se* pleadings to "less stringent standards than a formal pleading drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 127 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).  The court has an obligation to construe pleadings of self-represented litigants liberally.  *Id.* at 93-94.  The court is not required, however, to "conjure up questions never squarely presented to them," or to "recognize obscure or extravagant claims defying the most concerted efforts to unravel them."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278-79 (4th Cir. 1985).

potentially relevant to why he did not go through the DES process before discharge.  The AFBCMR acknowledges his allegation in their decision.  While the AFBCMR found no affirmative evidence of retaliation, it "failed to consider an important aspect of the problem" by not discussing the appropriateness of a DES evaluation. *Sierra Club*, 899 F.3d at 293.  The record shows the Plaintiff's Records Transmission Request form from just after his discharge, showing the status "Retirement" scratched out and replaced with "Discharge," and the report for "Retirement Orders" similarly scratched out. (ECF No. 16-4, at 8).  Plaintiff had provided notes of an orthopedic surgeon who found that an MEB was not necessary, (*Id.* at 7), and a letter from Retired Technical Sergeant Cabrera asserting, years after the fact, that he was not made aware of the designation that could have begun the DES process.  (ECF No. 16-5, at 59-60).  It is the AFBCMR's choice how to weigh this evidence, but it was unreasonable to not consider it or explain why a review through the DES could have been unnecessary in Plaintiff's case.[7]

---

[7] Plaintiff makes multiple references to the "benefit of the doubt" referenced in 38 C.F.R. § 5107, which says: "When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant." (*See, e.g.*, ECF No. 26, at 7).  This provision applies to decisions made by the Department of Veterans Affairs and is inapplicable here. *Pipes v. United States*, 123 F.4th 1324, 1333 n.9 (Fed. Cir. 2024) ("In obligating 'the Secretary' to provide VA claimants with the benefit of the doubt in cases of approximately equipoised evidence, section 5107 refers to the Secretary of Veterans Affairs, not the Secretary

This court's role is not to determine its preferred outcome in cases where reasonable minds can differ. Rather, this court must determine if the AFBCMR reached an arbitrary and capricious decision based on the record in front of it. Given the AFBCMR's failure to engage with the fundamental procedural questions present in the record, the AFBCMR's decision was unreasonable and must be remanded.

### 2. Estoppel

Finally, Plaintiff argues that the court should use its equitable powers and proceed on an estoppel theory.[8] His argument appears to be that the alleged retaliation led to a lack of due process in the disability evaluation process, (ECF No. 26, at 14), and the court should step in to address the harm to Plaintiff's constitutional rights. (*Id.* at 19).

To justify a finding of equitable estoppel, a litigant must show both a misrepresentation and subsequent reliance:

> [T]he party claiming the estoppel must have relied on its adversary's conduct in such a manner as to change his position for the worse and that reliance must have been

---

of the Air Force or of any other military branch."); *see also Bufkin v. Collins*, 604 US ___, 145 S.Ct. 728, 733 (2025).

[8] Plaintiff also requests that the "Defendants are estoped from making Contrary representations or further legal arguments" related to the Plaintiff's retraining contract with the government following his 1989 reassignment. (ECF No. 26, at 11). The government does not counter with any assertion about the retraining contract.

> reasonable in that the party claiming the
> estoppel did not know nor should it have known
> that its adversary's conduct was misleading.

*Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984) (citation modified). Plaintiff asserts that the relevant conduct by the government was the December 1990 declaration that he was "Unfit medical[ly] . . . requiring mandatory MEB/PEB as a contractual government obligation." (ECF No. 26, at 17.) Plaintiff seems to argue that he "relied" on subsequently receiving the benefit of the full MEB process, but instead he was "[d]enied promised reconstructive knee surgery" and "MEB/PEB review." (*Id.*) Neither of these is a statement or action by the AFBCMR; rather, this dispute is with the actions of the Air Force over three decades ago. Plaintiff's complaint only brings claims against the AFBCMR's decision denying him medical separation or retirement, (ECF No. 1 ¶¶ 51-59), and does not appear to be requesting that the Board be estopped from making any specific assertion.

Even if Plaintiff had a clear request for the government that were suitable for an estoppel argument, "[e]quitable estoppel against the government is strongly disfavored, if not outright disallowed, because it allows parties to collect public funds in a situation not expressly authorized by Congress." *Volvo Trucks of N. Am., Inc. v. United States*, 367 F.3d 204, 211 (4ᵗʰ Cir. 2004).

This court is not convinced that the unusual remedy of equitable estoppel is warranted in this case.

### D.  Plaintiff's Motion to Amend His Complaint and Preemptive Motion

Plaintiff filed a motion to amend his prayer for relief, (ECF No. 29), which Defendant opposed, (ECF No. 30).  On December 18, 2024, Plaintiff filed a document styled as a "Preemptive Motion Post Filing Motion to Amend Plaintiff's Prayer for Relief," (ECF No. 33), which appears to be both an anticipatory rebuttal of arguments Defendant may make in opposition and a request to add a violation of due process claim.  Two days later, Plaintiff filed a document saying that he was withdrawing the motion to amend his prayer for relief.  (ECF No. 34).  Given both the Plaintiff's request and that this court is granting his cross-motion for summary judgment, this court will grant a withdrawal of Plaintiff's motion to amend and Plaintiff's preemptive motion regarding the motion to amend is denied as moot.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be granted with respect to Plaintiff's monetary prayer for relief and otherwise denied, Plaintiff's cross-motion for summary judgment will be granted, Plaintiff's motion to amend will be withdrawn, and Plaintiff's preemptive motion regarding his

motion to amend will be denied as moot.  A separate order will follow.

                                                /s/
DEBORAH K. CHASANOW
United States District Judge